**WO**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

Gaye Nell Watkins,
Plaintiff,
v.
Denis McDonough, Secretary of Veterans Affairs,
Defendant(s).

No. CIV 24-126-TUC-CKJ

**ORDER**

On January 9, 2025, this Court granted Plaintiff Gaye Nell Watkins ("Watkins") leave to amend her complaint. On February 10, 2025, Watkins filed her Amended Complaint (Doc. 12).

I. *Procedural History*

On March 4, 2024, Watkins filed a Complaint for a Civil Case against Denis McDonough, Secretary of Veterans Affairs, alleging causes of action under Title VII of the Civil Rights Act for intentional employer discrimination, and under the Rehabilitation Act for accommodations that caused injury to Plaintiff. On July 8, 2024, this Court issued an Order *sua sponte* dismissing the Complaint with leave to amend. *See* Fed.R.Civ.P. 12(b)(6); *Creech v. Tewalt*, 84 F.4th 777, 787 (9th Cir. 2023), *citing Omar v. Sea–Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir.1987) ("A trial court may dismiss a claim sua sponte under [Rule] 12(b)(6). [Citation omitted.] Such a dismissal may be made without notice where the claimant cannot possibly win relief.").

In its dismissal order, the Court discussed procedural requirements (e.g., exhaustion of administrative relief), pleading requirements (e.g., short and plain statement of claims showing pleader is entitled to relief; sufficient factual allegations rather than conclusory statements), and claim requirements (e.g., causal link between a defendant and alleged conduct).

Watkins subsequently filed an amended complaint, but contemporaneously stated it was incomplete and requested additional time to file a completed Amended Complaint; the Court granted the request. On February 10, 2025, Watkins filed her completed Amended Complaint. The Court will review the Amended Complaint ("FAC") (Doc. 12).

II. *Amended Complaint and Factual Summary*

Watkins alleges she was employed by the Southern Arizona Veterans Affairs Health Care System ("SAVAHCS" or "the Agency") from May 2019 to May 2020 as a GS4 file clerk in Medical Records. She asserts she resigned from the Agency based on employment violations and intentional infliction of emotional distress.

Watkins alleges SAVAHCS intentionally inflicted emotional distress on her, violating Equal Employment Opportunity Commission ("EEOC") rules through disparate treatment in training and work assignments, avoidance, false accusations, multiple episodes of retaliation, and falsification of official documentation (including twice falsifying Watkins official timecard). Watkins alleges a person referred to as MD, the supervisor, made daily work assignments based on personnel on duty on any particular day. She was trained by her supervisor and Lead File Clerk Marvel ("Marvel").

The FAC implies Watkins complained of Marvel's lack of knowledge and error-filled training to the supervisor, to which MD replied, "give him time, he needs to learn too[.]" Complaint (Doc. 12, p. 1). In July 2019, after Marvel threatened physical assault against a coworker who was assisting Watkins, Watkins sought counseling from the American Federation of Government Employees ("AFGE"), but the request was mistakenly sent to an Assistant Director of SAVAHCS.

A "chain of command" meeting was scheduled with someone referred to as "LT." LT stated that a form would be generated to allow staff to immediately identify errors, seek resolution and prevent dings. Although LT promised to address the errors on Watkin's training record and provide a written memo of the meeting, those promises were not fulfilled. Rather, Watkins was taken off of overtime, although it had been approved the prior month; it appears Watkins is alleging MD informed Watkins that LT stated Watkins had been informed of this removal; Watkins asserts she was not informed of this removal. Efforts for clarification via email to LT were not responded to.

The Complaint provides the following list of EEOC Activity and Retaliation:

| Date | Complaint | Retaliation |
| --- | --- | --- |
| 07/24/19 | Disparate Training | Denial of OT (Scanning) |
| 08/05/19 | Avoidance | Unanswered emails and requests |
| 08/19/19 | Discrimination | Illegal Denial (false disqualification) |
| 09/01/19 | Disparate Assignment | Denial of OT (Record Retention) |
| 11/01/19 | Disparate Treatment | Low Perf Appr 11/01/19 |
| 11/08/19 | Disparate Treatment and (sic) | Productivity Sheet Demands Initiated |
| 11/12/19 | Retaliation | VAORM Misrepresentations |
| 11/20/19 | Retaliation | Continued Disparate Work Assignment |
| 12/19/19 | Retaliation | Phony Fact Finding Interview |
| 01/15/20 | Disparate Treatment | ADR was for show, no attempt to resolve |
| 01/20/20 | Disparate Treatment | Scolded by Chief, HAS for failed ADR |
| 04/20/20 | Avoidance, Retaliation | Inappropriate AWOL charge |
| 04/20/20 | Unfair Prod Sheet demand | Lowered Perf Appraisal 04/2020 |
| 04/20/20 | Hostile Treatment | Falsely Accusing |
| 05/15/20 | Retaliation | Erroneous AWOL charge |
| 05/15/20 | Ignoring of complaint | Continuous demand for more details |

Am. Comp. (Doc. 12, p. 2).

On November 1, 2019, the Performance Evaluation ("PE") given to Watkins rated her as "fully successful." Watkins alleges this is the only "fully successful" evaluation she has received through both federal and state positions; all of her other ratings were "excellent" or "outstanding," some coming with monetary awards.

Watkins filed a complaint at the SAVAHCS EEOC office on November 8, 2019. She states the complaint was based on (a) avoidance (no responses to emails/communications), (b) unethical/unfair disqualification for an open position, and (c) the November 1, 2019, PE, including the assignment of and subsequent removal from overtime. Watkins requested reevaluation of the PE and reassignment of position/supervisor as a resolution. Watkins was directed to contact the Veterans Administration Office of Resolution Management ("VAORM"). After an interview was conducted by VAORM employee Teresa Jones ("Jones") on or after November 12, 2019, Watkins was informed an investigation was required. As requested by Jones, Watkins provided the Human Intelligence Task ("HIT") Job Announcement and Watkins' resume.

The FAC alleges retaliation shortly after she filed her SAVAHCS EEOC complaint and was interviewed by VAORM. On November 15, 2019, MD and LT introduced a Productivity Worksheet ("PW"). The tasks included in the PW did not include Inpatient Records, which required greater time to process. Watkins received conflicting responses when she questioned this omission, but did follow the suggestions to request the PW include Inpatient Records and maintain a count of the pages she completed.

In December 2019, a fact-finding interview was conducted regarding the November 8, 2019, EEOC complaint, by Kyle Cipra ("Cipra"). The FAC asserts Cipra appeared to lack sufficient knowledge/understanding of applicable laws and regulations and only addressed one of Watkins' four issues. Cipra determined there was no merit to Watkins' complaint.

In January 2020, Watkins participated in mediation scheduled by the EEOC regarding the November 8, 2019, complaint. AFGE Representative Katie L. attended with Watkins. As summarized in the FAC:

> L T's explanations then were:  she decided I had not completed my training, and when AFGE Rep asked when was that communicated to me, she said, 'it wasn't.'  When asked about failure to respond to emails, she stated she sent response to supervisor, MD, who denies receipt of any such emails.

FAC (Doc. 12, p. 4).

In April 2020 MD scolded Watkins because she requested ½ hr leave to secure a prescription the base pharmacy had previously failed to fill.  As LT had suggested lenient leave because the work was low because of the Covid-19 pandemic, and Watkins had been subject to a number of encounters where MD had used ad hominem statements, gaslighting, and lies instead of providing appropriate responses to Watkins, Watkins went to HR and ultimately requested leave for the remainder of the day.  MD originally approved the leave, but then changed his mind and charged Watkins Away Without Leave ("AWOL").  HR Employee Relations person Joyce informed Watkins if she was absent for less than an hour, charging her five hours AWOL was inappropriate.  Joyce informed Watkins she would speak with MD, but nothing changed.

The FAC asserts VAORM never conducted an investigation and closed the informal session as unable to substantiate in February 2020.  The FAC states:

> Teresa Jones VAORM, after misleading and misinforming me about an investigation. The complaint was falsified, in that she stated, my complaint was about Vance the coworker who was the assistant timekeeper and another coworker. There was no mention of the individuals in the complaint. A formal complaint was filed with VAORM March 2020.

FAC (Doc. 12, p. 4).  However, the FAC also states Watkins received numerous emails between March and May 2020 from VAORM requesting clarification of the issues; Watkins promptly provided the requested information.  In April 2020, MD provided Watkins with a Needs Improvement rating, based on the PW monthly numbers.  Watkins disputed the rating, pointing out a form had been incorrectly filled out, including wrong percentages, failing to consider time away from work (e.g., training sessions, holiday time off, office events).

Based on a medical recommendation from her PCP, Watkins sought and secured other

employment.[1] On her first day of employment, Watkins arrived 1 hour, 20 minutes, before Acting Supervisor HM. When the acting supervisor arrived, Watkins requested leave to attend an appointment she had been unable to reschedule. Watkins provided HM with an email seeking leave as requested by HM. Watkins was not denied leave prior to her departure for her appointment. HM and LT marked Watkins as AWOL for the day. The FAC asserts that day consisted only of 1¾ hours of work, because of a farewell party and an "out-processing" session.

In June 2020, Watkins received a more than 30 page Affidavit from VAORM. It appears the FAC is alleging VAORM requested Watkins complete and return the Affidavit within 30 days, despite the delay from November 2019 through May 2020 in requesting the Affidavit. "Recognizing the futility of further communications attempts with VAORM, [Watkins] requested a Right To Sue Letter." FAC (Doc. 12, p. 5).

Watkins filed a formal EEOC complaint in September 2020. After filings were completed, the Agency requested a decision without a hearing, stating Watkins was incompetent "and mentioning their decision had been to terminate [Watkins] on May 18, 2020 based on the Productivity Worksheet numbers ([Watkins'] last day of work was 05/15/20)." FAC (Doc. 12, p. 5). In May 2023, Administrative Law Judge Kruse ("the ALJ" or "ALJ Kruse") granted the request for a decision without a hearing, but subsequently rescinded that decision "as due process had not been served[.]" *Id.* Discovery and other deadlines were set and a hearing was scheduled. VAORM failed to timely provide the requested discovery and requested an extension on the last day. The ALJ scolded Watkins for not informing the ALJ office and ordered the Agency to provide the requested information and set a deadline for Watkins to respond.

ALJ Kruse granted the request for a decision without a hearing because the ALJ "could not relate to the issues." *Id.* at 6. The FAC refers to a delay in approving leave

---

[1]The FAC refers to a "PCP." For purposes of this Order, the Court accepts this as a primary care physician.

resulting in Watkins needing additional physical therapy, a denial of a request for an alternate schedule so additional leave would not be required for physical therapy (despite other employees being allowed alternate schedules based on preference and for family issues), and Watkins' greater numbers/accomplishments compared to others despite Watkins' significant leave.

The FAC states:

> In Oct 23, in response to the Discovery Interrogation requested referencing the discrepancies in MD's and LT's Affidavits Scott McMillan, VAORM response was: they no longer worked there; the request for other's Performance Evals was provided after ALJ Kruse's Order. His response for copies of other's Productivity WorkSheet was that document was not found, it was not a valid VA Document, it did not exist, yet it is part of the VA Report of Investigation. It is referenced in them proclaiming it as proof of my incompetence, when mentioning their intent to terminate me on May 18th. (The day after my last day at work).

FAC (Doc. 12, p. 6). Watkins alleges the Agency was provided intentional disinformation. For example, the Agency referred to PW metrics with scores as low as 25% although Watkins' lowest score was miscalculated at 37% and presented performance documents to show Watkins was incompetent, despite asserting the documents did not exist. VAORM also alleged information "without anything to substantiate the accusations, and then attempting to refuse to respond to Discovery Requests with that employee no longer works here, or requested documentation does not exist for other employees, when it is the document used in their justification to attempt to terminate [Watkins]." *Id*. The FAC also asserts the VA lost her Office of Personnel Management ("OPM") Official Personnel File ("OPF"), which affects Watkins' OPM annuity.

Attached to the FAC are: (1) List of Known Individuals, (2) HIT Training Tech Tips, (3) Productivity Worksheets, and (4) Watkins' May 2023 statement of costs.

III. *Caption and Parties*

Watkins' FAC does not include a caption with all required information. The applicable rule states:

(a) Caption; Names of Parties. Every pleading must have a caption with the court's

> name, a title, a file number, and a Rule 7(a) designation. The title of the complaint must name all the parties; the title of other pleadings, after naming the first party on each side, may refer generally to other parties.

Fed.R.Civ.P. 10(a). The failure to include a caption results in it being unclear against whom Watkins seeks to state claims. The Court recognizes Watkins included a caption in her original Complaint (Doc. 1). However, the Court's July 8, 2024, pointed out it was unclear who Watkins was seeking to name as Defendants. Although Watkins attached a List of Known Individuals (Doc. 12-1) to her FAC, she does not name any specific defendant in the FAC. Watkins is advised the caption of a complaint must include all named defendants.

As no defendant is named in the FAC, the Court will dismiss the FAC and claims with leave to amend.

IV. *General Requirements*

A complaint is to contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Rule 8(a), Fed.R.Civ.P. While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Especially where the pleader is *pro se*, the pleading should be liberally construed in the interests of justice. *Johnson v. Reagan*, 524 F.2d 1123 (9th Cir. 1975). Indeed, a "complaint [filed by a pro se plaintiff] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010), *quoting Erickson v. Pardus*, 551 U.S. 89, 94 (2007), *per curiam*.

A complaint must set forth sufficient facts that serves to put defendants on notice as to the nature and basis of the claim(s). Failure to name potential defendants or sufficient facts to advise a defendant of the claim(s) may result in no claim(s) being presented against a defendant. Furthermore, all allegations of a claim are to be set forth in numbered paragraphs that should be limited to a single set of circumstances. Fed.R.Civ.P. 10(a). "Each

claim . . . shall be stated in a separate count . . . whenever a separation facilitates the clear presentation of the matters set forth." *Id*. Failure to set forth claims in such a manner places the onus on the court to decipher which, if any, facts support which claims, as well as to determine whether a plaintiff is entitled to the relief sought. *Haynes v. Anderson & Strudwick, Inc.*, 508 F.Supp. 1303, 1307, n.1 (D.C.Va. 1981). Enforcement of this rule is discretionary with the Court, but such enforcement is appropriate where it is necessary to facilitate a clear presentation of the claims. *See*, *Benoit v. Ocwen Financial Corp., Inc.*, 960 F.Supp. 287 (S.D.Fla. 1997), *affirmed* 162 F.3d 1177 (compliance with rule required where allegations were so confusing and conclusory, claims were commingled, and impossible to determine nature of claims). In other words, Watkins may not simply reference other documents in a complaint and expect the Court and other parties to search for facts that may support her claim(s); a complaint itself must set forth sufficient facts that serves to put defendant(s) on notice as to the nature and basis of the claim(s).

V. *Requirement that Action State a Claim on Which Relief Can be Granted*

The United States Supreme Court has determined that, in order to survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its facts." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a complaint need not plead "detailed factual allegations," the factual allegations it does include "must be enough to raise a right to relief above the speculative level." *Id*. at 555. Indeed, Fed.R.Civ.P. 8(a)(2) requires a showing that a plaintiff is entitled to relief "rather than a blanket assertion" of entitlement to relief. *Id*. at 555 n. 3. The complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right to action." *Id*. at 555. Although a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) has not been filed in this case, the Court considers these standards in screening Watkins' FAC to determine if Watkins has "nudge[d] [her] claims across the line from conceivable to plausible." *Id*. at 570. The Court also considers

that the Supreme Court has cited *Twombly* for the traditional proposition that "[s]pecific facts are not necessary [for a pleading that satisfies Rule 8(a)(2)]; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardue*, 551 U.S. 89 (2007); *see also Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002) (a complaint need not plead a prima facie case of discrimination, but a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face"), *quoting Twombly*, 550 U.S. at 570.

In discussing *Twombly*, the Ninth Circuit has stated:

> "A claim has facial plausibility," the Court explained, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).
>
> In sum, for a complaint to survive a motion to dismiss, the non-conclusory "factual content," and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief. *Id.*

*Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2009).

This Court must take as true all allegations of material fact and construe them in the light most favorable to Watkins. *See Cervantes v. United States*, 330 F.3d 1186, 1187 (9th Cir. 2003). In general, a complaint is construed favorably to the pleader. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds*, 457 U.S. 800. Nonetheless, the Court does not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Furthermore, the Court is not to serve as an advocate of a *pro se* litigant, *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987), in attempting to decipher a complaint.

VI. *Claims in the FAC*

The FAC includes a list of retaliatory acts against her. It is not clear if Watkins is

seeking to state additional claims. The Court will discuss the retaliation claims and possible additional claims so Watkins can make an intelligent decision whether to file a Second Amended Complaint ("SAC") and which claims to include in a SAC. *Bonanno v. Thomas*, 309 F.2d 320 (9th Cir. 1962); *Eldridge v. Block*, 832 F.2d 1132 (9th Cir. 1987).

VII. *Discrimination – Retaliation*

Title VII prohibits an employer from "discriminat[ing] against any of [its] employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.." 42 U.S.C. § 2000e–3(a). Title VII retaliation claims "require the plaintiff to prove that the employer acted with conscious intent to discriminate." *McDonnell Douglas Corp. V. Green*, 411 U.S. 792, 805-06 (1973); *see also Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir.1987), *citing Ruggles v. Cal. Polytechnic State Univ.*, 797 F.2d 782, 784 (9th Cir.1986)) (The *McDonnell Douglas* framework and allocation of proof that governs disparate treatment claims also governs retaliation claims.). Alternatively to the *McDonnell Douglas* burden shifting framework, a plaintiff may proceed with "direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the employer." *Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1105 (9th Cir. 2008), *citations omitted*.

Watkins must allege (1) engagement in a protected activity; (2) an adverse employment action; and (3) a causal link between the two. *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). Watkins has alleged numerous protective activities she participated in, from complaining of disparate treatment to disputing performance evaluations. Further, she has alleged retaliatory conduct/adverse actions. It does appear the alleged adverse actions occurred shortly after the alleged protective activity. *See Grabowski v. Arizona Bd. of Regents*, 69 F.4th 1110, 1122 (9th Cir. 2023) (causal link element of the retaliation framework is construed "broadly" and proximity in time may provide

circumstantial evidence of causal link); *Porter v. California Dep't of Corr.*, 419 F.3d 885, 895 (9th Cir. 2005); *but see Kama v. Mayorkas*, 107 F.4th 1054, 1060 (9th Cir. 2024) (investigation may defeat any causal inference that might otherwise follow from the temporal proximity between a plaintiff's protected activity and the termination of his employment). The Court finds it appears Watkins has stated a claim for retaliation. However, as the FAC does not specify any defendant(s), dismissal with leave to amend is appropriate.

VIII. *Discrimination – Disparate Treatment*

The Ninth Circuit has stated:

> A plaintiff in an employment discrimination case can proceed under two theories of employment discrimination: disparate treatment and disparate impact. Disparate treatment is demonstrated when the employer simply treats some people less favorably than others because of a protected characteristic. Disparate impact is demonstrated when employment practices that are facially neutral in their treatment of different groups fall more harshly on one group than another and cannot be justified by business necessity.

*Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1049 n.1 (9th Cir. 2012) (cleaned up). Watkins may be seeking to state a claim of discrimination based on disparate treatment.

To adequately state a disparate treatment discrimination claim, Watkins must allege she belongs to a protected class, she was performing according to her employer's legitimate expectations, she suffered an adverse employment action, and similarly situated employees were treated more favorably or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *Reynaga v. Roseburg Forest Products*, 847 F.3d 678, 691 (9th Cir. 2017), *citing McDonnell Douglas*, 411 U.S. at 802.

Additionally, the Age Discrimination in Employment Act ("ADEA") "makes it unlawful for an employer to discriminate "because of [an] individual's age." *Shelley v. Geren*, 666 F.3d 599, 606 (9th Cir. 2012); *see also* 29 U.S.C. § 631(a) (applicable prohibitions are "limited to individuals who are at least 40 years of age"). Unlike Title VII, however, to "establish a disparate-treatment claim under the plain language of the ADEA, [] a plaintiff must prove that age was the "but-for" cause of the employer's adverse decision.

*Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009); *Shelley*, 666 F.3d at 607 ("Unlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor."), *citation omitted*.

Watkins has not specifically alleged a protected class; however, a prior filing indicates Watkins is a black female who is older than 40 (Doc. 7, p. 1). Watkins has alleged she was inaccurately evaluated, implying her performance was such to meet her employer's legitimate expectations; however, again, this has not been specifically alleged. Further, Watkins, however, has not stated sufficient facts alleging similarly situated employees were treated more favorably or other circumstances surrounding the adverse employment action which give rise to an inference of discrimination. Additionally, Watkins has not alleged her age was a "but-for" cause of the employer's adverse decision. To any extent Watkins is seeking to state a disparate treatment discrimination claim, the Court finds Watkins has not stated a claim upon which relief can be granted. The Court will dismiss this claim with leave to amend.

IX. *Discrimination – Hostile Environment*

The FAC refers to hostile treatment. To any extent Watkins is seeking to state a hostile work environment claim, she must state sufficient facts that (1) she was subjected to verbal or physical conduct of a nature based on a protected class, (2) the conduct was unwelcome, and (3) the "conduct was sufficiently severe or pervasive to alter the conditions of [Watkins'] employment and create an abusive work environment." *Reynaga,* 847 F.3d 678 at 686, *citing Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003). In considering whether a work environment has been alleged to be sufficiently hostile, the Court examines the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S.

775, 787–88 (1998), *quoting Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993) . "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)" are not sufficient to create an actionable claim under Title VII, but the harassment need not be so severe as to cause diagnosed psychological injury. *Faragher*, 524 U.S. at 788. It is enough "if such hostile conduct pollutes the victim's workplace, making it more difficult for her to do her job, to take pride in her work, and to desire to stay in her position." *Reynaga*, 847 F.3d at 687, *quoting Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463. Further, a plaintiff must allege the work environment was both subjectively and objectively hostile. *Reynaga*, 847 F.3d at 687, *citing Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 871-72 (9th Cir. 2001).

The FAC does not state sufficient facts that Watkins was subjected to verbal or physical conduct based on, presumably, Watkin's sex. Further, there is no indication that any such conduct was unwelcome and sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment. The Court finds the FAC does not state a claim for discrimination based on a hostile work environment. To any extent the FAC seeks to state this claim, the Court will dismiss this claim with leave to amend.

X. *Discrimination – Lack of Accommodation*

The FAC discusses the Agency's failure to accommodate her medical appointments. It is not clear if Watkins is seeking to state a lack of reasonable accommodation claim. To allege a prima facie employment claim under the Americans with Disabilities Act ("ADA"), Watkins must state (1) she is disabled within the meaning of the ADA; (2) she is qualified to perform the essential functions of her job either with or without reasonable accommodation, and; (3) she was terminated or subjected to an adverse employment action because of her disability. *Kenney v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996); *see also Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003). Additionally, the Ninth Circuit has stated:

> The Ninth Circuit has held that notifying an employer of a need for an accommodation triggers a duty to engage in an "interactive process" through which the employer and employee can come to understand the employee's abilities and limitations, the employer's needs for various positions, and a possible middle ground for accommodating the employee. *See Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1111–16 (9th Cir. 2000) (en banc), *vacated on other grounds sub nom.*, *US Airways, Inc. v. Barnett*, 535 U.S. 391, 406, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002). In *Barnett*, the Ninth Circuit held that if an employer receives notice and fails to engage in the interactive process in good faith, the employer will face liability "if a reasonable accommodation would have been possible." *Barnett*, 228 F.3d at 1116 (emphasis added). In other words, there exists no stand-alone claim for failing to engage in the interactive process. Rather, discrimination results from denying an available and reasonable accommodation.

*Snapp v. United Transportation Union*, 889 F.3d 1088, 1095 (9th Cir. 2018)

The FAC does not state sufficient facts that Watkins is disabled, that she is qualified to perform the essential functions of the job with or without reasonable accommodation, or that any adverse action was because of any possible disability. The Court finds the FAC does not state a claim for discrimination based on a lack of accommodation. To any extent the FAC seeks to state this claim, the Court will dismiss this claim with leave to amend.

Accordingly, IT IS ORDERED:

1. The complete Amended Complaint (Doc. 12) and the claims contained therein are DISMISSED WITH LEAVE TO AMEND.

2. Watkins SHALL HAVE thirty (30) days from the date of filing of this Order to file a Second Amended Complaint.[2] All causes of action alleged in the original Complaint or complete Amended Complaint which are not alleged in any Second Amended Complaint will be waived. Any Second Amended Complaint filed by Watkins must be retyped or rewritten in its entirety and may not incorporate any part of the original Complaint or the complete Amended Complaint by reference. Any Second Amended Complaint submitted by Watkins shall be clearly designated as a Second Amended Complaint on the face of the document. Any Second Amended Complaint must state specific allegations against proper Defendant(s), named as Defendant(s) in the caption, *see* Fed.R.Civ.P. 10(a); and identify who

---

[2] *See* Complaint forms for use and/or guidance, https://www.uscourts.gov/forms-rules/forms/civil-pro-se-forms; https://www.uscourts.gov/forms-rules/forms/complaint-employment-discrimination.

participated in which activities alleged in the Second Amended Complaint; and state what injury, if any, Watkins suffered as a result of the activities of each Defendant.

3. At all times during the pendency of this action, Watkins shall immediately advise the Court of any change of address and its effective date. Such notice shall be captioned "NOTICE OF CHANGE OF ADDRESS". The notice shall contain only information pertaining to the change of address and its effective date. The notice shall not include any motions for any other relief. Watkins shall serve a copy of the Notice of Change of Address on all served opposing parties. Failure to file a NOTICE OF CHANGE OF ADDRESS may result in the dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

DATED this 26th day of March, 2025.

Cindy K. Jorgenson
United States District Judge